# United States Court of Appeals For the Second Circuit

August Term 2022

Argued: February 9, 2023
Decided: July 2, 2024

No. 21-2905

---

ISABEL LITOVICH, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, UNITED FOOD AND COMMERCIAL WORKERS UNION AND PARTICIPATING FOOD INDUSTRY EMPLOYERS TRI-STATE PENSION FUND, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, HOLDCRAFT MARITAL TRUST, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, MICHAEL V. COTTRELL, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, FRANK HIRSCH, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

*v.*

BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, BOFA SECURITIES, INC., BARCLAYS CAPITAL INC., CITIGROUP INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE

BANK SECURITIES INC., THE GOLDMAN
SACHS GROUP, INC., GOLDMAN SACHS & CO.
LLC, JPMORGAN CHASE & CO., J.P.
MORGAN SECURITIES LLC, MORGAN
STANLEY, MORGAN STANLEY & CO. LLC,
MORGAN STANLEY SMITH BARNEY LLC,
NATWEST MARKETS SECURITIES INC., WELLS
FARGO & CO., WELLS FARGO SECURITIES,
LLC, WELLS FARGO CLEARING SERVICES,
LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-03154, Lewis J. Liman, *Judge*.

Before:     LEE AND NATHAN, *Circuit Judges*, AND RAKOFF, *District Judge*.[*]

Plaintiffs-Appellants, bond investors who bought and sold certain types of corporate bonds from and to Defendants-Appellees, who are investment bank dealers of those bonds, appeal from the district court's judgment granting Defendants-Appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Several months after the district court's order, the parties learned that the district court judge had presided over part of the case while his wife owned stock in one of the Defendants, although she had divested that stock before the district court judge issued his decision.

In light of these circumstances, we are tasked with deciding whether, pursuant to 28 U.S.C. § 455, vacatur is warranted because the district court judge was required to disqualify himself before issuing his decision. Under § 455(a), a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," including, under § 455(b)(4), when "he knows

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

that . . . his spouse . . . has a financial interest . . . in a party to the proceeding." 28 U.S.C. § 455(a), (b)(4). Here, while there was no outright conflict when the district court judge ruled on the merits of this action, we nonetheless conclude that because § 455(a) and our related precedents required pre-judgment disqualification, vacatur is warranted.

As a result, we **VACATE** the judgment, and **REMAND** the case to the district court for further proceedings, consistent with this opinion.

DAVID C. FREDERICK, (Gregory Rapawy, Eliana Margo Pfeffer, on the brief), Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, DC, *for Plaintiffs-Appellants*.

Christopher M. Burke, Scott+Scott Attorneys at Law LLP, New York, NY, *for Plaintiffs-Appellants*.

Walter W. Noss, Kate Lv, Scott+Scott Attorneys at Law LLP, San Diego, CA, *for Plaintiffs-Appellants*.

George A. Zelcs, Chad E. Bell, Ryan Z. Cortazar, Korein Tillery LLC, Chicago, IL, *for Plaintiffs-Appellants*.

Glen E. Summers, Karma M. Giulianelli, Bartlit Beck LLP, Denver, CO, *for Plaintiffs-Appellants*.

RICHARD C. PEPPERMAN II, (Matthew J. Porpora, Jonathan S. Carter, on the brief), Sullivan & Cromwell LLP, New York, NY, *for Defendants-Appellees* The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC.

Adam S. Hakki, Richard F. Schwed,

Shearman & Sterling LLP, New York, NY, *for Defendants-Appellees* Bank of America Corporation, BofA Securities, Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

Barry G. Sher, Kevin P. Broughel, Paul Hastings LLP, New York, NY, *for Defendant-Appellee* Barclays Capital, Inc.

Herbert S. Washer, Sheila C. Ramesh, Adam S. Mintz, Cahill Gordon & Reindel LLP, New York, NY, *for Defendant-Appellee* Credit Suisse Securities (USA) LLC.

Robert D. Wick, John S. Playforth, Covington & Burling LLP, Washington, DC, *for Defendants-Appellees* JPMorgan Chase & Co. and J.P. Morgan Securities LLC.

Paul S. Mishkin, Adam G. Mehes, Davis Polk & Wardwell LLP, New York, NY, *for Defendant-Appellee* NatWest Markets Securities Inc.

Jay Kasner, Karen M. Lent, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *for Defendants-Appellees* Citigroup Inc. and Citigroup Global Markets Inc.

John F. Terzaken, Adrienne V. Baxley, Simpson Thacher & Bartlett LLP, Washington, DC, *for Defendant-Appellant* Deutsche Bank Securities Inc.

Richard A. Rosen, Brad S. Karp, Susanna M. Buergel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, Kannon K.

Shanmugam, Jane B. O'Brien, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC, *for Defendants-Appellees* Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley Smith Barney LLC.

Jayant W. Tambe, Laura W. Sawyer, Amanda L. Dollinger, Jones Day, New York, NY, *for Defendants-Appellees* Wells Fargo & Co., Wells Fargo Securities, LLC, and Wells Fargo Clearing Services, LLC.

PER CURIAM:

Plaintiffs-Appellants ("Plaintiffs"), bond investors who bought and sold certain types of corporate bonds from and to Defendants-Appellees ("Defendants"), who are investment bank dealers of those bonds, appeal from the district court's judgment granting Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Several months after the district court's order, the parties learned that the district court judge had presided over part of the case while his wife owned stock in one of the Defendants, although she had divested that stock before the district court judge issued his decision. Accordingly, not only are Plaintiffs appealing the merits of the district court's decision, but they also contend that the district court judge should have disqualified himself in light of this prior financial interest of his wife.

Thus, we are tasked with deciding whether, pursuant to 28 U.S.C. § 455,

vacatur is warranted because the district court judge was required to disqualify himself before issuing his decision. Under § 455(a), a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," including, under § 455(b)(4), when "[h]e knows that . . . his spouse . . . has a financial interest . . . in a party to the proceeding." 28 U.S.C. § 455(a), (b)(4). Here, while there was no direct conflict of interest when the district court judge ruled on the merits of this action, we nonetheless conclude that because § 455(a) and our related precedents required pre-judgment disqualification, vacatur is warranted.

As a result, we **VACATE** the judgment, and **REMAND** the case to the district court for further proceedings, consistent with this opinion.

### I. BACKGROUND

Plaintiffs are bond investors who bought and sold certain types of corporate bonds from and to Defendants, who are financial institutions and major dealers in the corporate bond market, including Bank of America Corporation. Plaintiffs brought an antitrust action against Defendants, principally alleging that Defendants violated § 1 of the Sherman Act by "engag[ing] in a pattern of parallel conduct and anticompetitive collusion" to restrict forms of competition that would

6

have "improve[d] odd-lot pricing for bond investors."  App'x at 86.  As a result of the purported conspiracy, Defendants allegedly "accrue[d] supracompetitive profits" at the expense of individual and smaller investors, including Plaintiffs. App'x at 104.

Plaintiffs filed the initial complaint on April 21, 2020, and the case was assigned to the Honorable Lewis J. Liman, District Judge for the Southern District of New York.  Following Plaintiffs' submission of the operative amended Complaint on October 29, 2020, Defendants filed a joint motion to dismiss on December 15, 2020, in which they argued that Plaintiffs failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiffs filed their response on January 28, 2021.  Oral argument regarding the motion occurred in the district court on September 9, 2021.  On October 25, 2021, the district court granted Defendants' motion to dismiss in its entirety, finding that Plaintiffs did not plead a plausible anticompetitive conspiracy, and dismissing the Complaint with prejudice.

On February 25, 2022, four months after the Complaint was dismissed, the Clerk of Court of the Southern District of New York sent a letter to the parties stating that it had been brought to Judge Liman's attention that "while he presided

7

over the [*Litovich*] case his wife owned stock in Bank of America Corporation." Suppl. App'x at 263. The letter continued:

> His wife's stock ownership is imputed to Judge Liman. That ownership of stock neither affected nor impacted his decisions in this case. However, that stock ownership would have required recusal under the Code of Conduct for United States Judges, and thus, Judge Liman directed that [the Clerk of Court] notify the parties of the potential conflict.

*Id*. The letter did not indicate when Judge Liman learned of the conflict.

A few days later, on March 1, 2022, *The Wall Street Journal* published an article discussing the high number of recusal violations apparent among the federal judiciary. James V. Grimaldi et al., *Fallout From Judges' Financial Conflicts Spreads to Appeals Courts*, Wall St. J. (Mar. 1, 2022), https://www.wsj.com/articles/fallout-from-judges-financial-conflicts-spreads-to-appeals-courts-11646155384?st=1o4zhc5b0gqnzj2 [https://perma.cc/7J6Q-FMVW]. The article discussed Judge Liman's failure to recuse himself in this case as an example. *Id*. It stated that "[t]he [*Litovich*] case is one of 13 lawsuits in which the judge, after an inquiry last month from the Journal, asked a clerk to file notices to parties in those cases saying he should have disqualified himself." *Id.*

One week after the clerk's notification to the parties, and one day after *The Wall Street Journal* article was published, the case was reassigned to the Honorable

Valerie E. Caproni on March 2, 2022. On March 14, 2022, the Clerk of Court sent a second letter to the parties, specifying that "the stock holding referenced in [the] February 25 letter was fully divested in July 2021, before the final Opinion and Order . . . terminating this case was issued in October 2021." Suppl. App'x at 265.

Plaintiffs timely appealed.

## II. DISCUSSION

We must decide whether the district court judge's failure to recuse himself *sua sponte* prior to issuing a decision on the merits of this case—even though a direct conflict did not exist at the time the decision was published—disqualified him under 28 U.S.C. § 455(a), and if so, whether that disqualification warrants vacatur of the decision. On the record before us and for reasons explained below, in particular, guarding against even the appearance of partiality, we answer yes to both inquiries.

### A. Statutory Disqualification

Title 28 U.S.C. § 455(a) states, in relevant part, that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) has been described as a "catchall recusal provision," *In re Aguinda*, 241 F.3d 194, 200 (2d Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994) (internal quotation marks omitted)), that "governs

9

circumstances that constitute an appearance of partiality, even though actual partiality has not been shown," *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003). A judge need not have actual knowledge of the disqualifying circumstance for § 455(a) to apply. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988). That is because the purpose of § 455(a) is "to promote public confidence in the integrity of the judicial process," which "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Id*. at 860. Accordingly, the test for whether an appearance of partiality exists "is an objective one based on what a reasonable person knowing all the facts would conclude." *Chase Manhattan Bank*, 343 F.3d at 127; *see Aguinda*, 241 at 201 ("Where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required." (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992))).

Among the circumstances requiring disqualification, § 455(b)(4) provides, in relevant part, that a judge "shall also disqualify himself" when "[h]e knows that . . . his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected

by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Section 455(c) imposes the additional duty that a federal judge "should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse." As relevant to the current proceedings, § 455(d)(4) defines "financial interest" as an "ownership of a legal or equitable interest, however small."

Unlike § 455(a), which covers even the appearance of partiality, § 455(b)(4)'s requirement of disqualification applies only when the judge actually knows about the disqualifying circumstance. *Liljeberg*, 486 U.S. at 859. Even then, however, the existence of a financial interest on the part of a judge's spouse is not always grounds for automatic disqualification, as a judge may avoid disqualification if he "discloses and divests [the] financial interest." *Chase Manhattan Bank*, 343 F.3d at 127. Specifically, Section 455(f) provides, in relevant part, that

> if any . . . judge . . . to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or *discovery, after the matter was assigned to him or her*, that . . . his or her spouse . . . has a financial interest in a party (other than an interest that could be substantially affected by the outcome), *disqualification is not required if the . . . spouse . . . divests himself or herself of the interest that provides the grounds for the disqualification*.

28 U.S.C. § 455(f) (emphasis added). *See Kidder, Peabody & Co. v. Maxus Energy*

*Corp.*, 925 F.2d 556, 561 (2d Cir. 1991) (holding that the § 455(f) exception applied where we found it unlikely that a district judge "knew of his interest simply because one or two passing references were made about [it]," and the parties did not file corporate disclosure statements at the commencement of the action).

**B.    Analysis**

In the present case, Plaintiffs argue that vacatur is necessary because Judge Liman's wife owned Bank of America Corporation stock for at least part of the time that Judge Liman presided over this case. Plaintiffs assert that while the record does not reflect precisely when Judge Liman learned of the conflict, recusal was mandatory under § 455(b)(4) if he learned of the conflict before his ruling in October 2021. Alternatively, they argue that even if Judge Liman learned of the conflict after his ruling, disqualification is still warranted because he failed to fulfill his duty under § 455(c) to inform himself of any potential conflict. Plaintiffs likewise maintain that recusal under § 455(a) was "mandatory" because Judge Liman's impartiality could reasonably be questioned, and as such posed a risk of general harm to the parties, other proceedings, and public confidence in the judicial process. Appellant's Br. at 60.

Defendants disagree. They argue that there are no grounds for vacating the judgment under § 455 because Judge Liman's wife fully divested her stockholding

in Bank of America Corporation in July 2021, which was approximately two months before oral argument occurred and three months before Judge Liman granted Defendants' motion to dismiss.  Defendants also assert that there is no § 455(b)(4) violation because "[t]he chronology suggests that Judge Liman first became aware of his wife's stockholdings in February 2022, when *The Wall Street Journal* inquired about his wife's investments," which was approximately four months after his October 2021 decision.  *Id*. at 58.[1]  They similarly maintain that Plaintiffs' interpretation of § 455(c) would create a "*per se* rule" that would require "'mandatory' vacatur if a judge fails to discover a potential conflict."  *Id*. at 59.  Finally, Defendants argue in the alternative that even assuming a § 455(a) violation based on the appearance of partiality, this Court's *de novo* review of the district court's decision to grant the motion to dismiss "ensures that no injustice will occur . . . and renders any recusal failure harmless."  *Id*. at 58.

Based on this Court's precedent, we agree with Plaintiffs that vacatur is required under § 455(a) because of the uncured financial conflict.  We thus do not

---

[1] *See* Grimaldi, *supra* page 8 ("The 2020 suit against 10 banks seeks to recover damages that plaintiffs say exceed $10 billion for overcharging them on bond purchases.  Judge Liman didn't disclose that a family member owned as much as $15,000 in Bank of America, a defendant.  Last year, Judge Liman granted the motion of defendants including Bank of America to dismiss in the case with prejudice.").

reach the merits of the case.

"Section 455(a) applies when a reasonable person would conclude that a judge was violating Section 455(b)(4)" due to a conflict of financial interest. *Chase Manhattan Bank*, 343 F.3d at 128. We focus our attention on § 455(a), rather than § 455(b)(4) itself, because the record lacks clarity on precisely when the district judge learned of the conflict. For our purposes, we assume that Judge Liman had no knowledge of the conflict until after it was reported by *The Wall Street Journal*, which occurred after Judge Liman issued his decision granting the motion to dismiss. In the absence of actual knowledge by the district judge that "his spouse . . . has a financial interest . . . in a party," § 455(b)(4) does not mandate recusal. "Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a)." *In re Certain Underwriter*, 294 F.3d 297, 306 (2d Cir. 2002). Here, the record indicates that Judge Liman presided over this matter during the time that his spouse held an ownership interest in a party to the litigation. This conflict-creating ownership and financial interest existed until some time after the briefing on the instant motion to dismiss was fully submitted. Looking at these facts "fully from the perspective of an 'objective, disinterested observer,'" *id.* (quoting

14

*Aguinda*, 241 F.3d at 201), we conclude that it is reasonable to question the partiality of a judge presiding over a case in which his spouse holds an ownership interest in a party. We therefore hold that the district court violated § 455(a). *See also ExxonMobil Oil Corp. v. TIG Insurance Co.*, 44 F.4th 163, 171–73 (2d Cir. 2022) (assuming a violation of § 455(a) where the district court judge owned stock in one of the parties, even where no facts suggested the judge had knowledge of his financial interest before issuing the judgment); *Brock v. Zuckerberg*, 2022 WL 1231044, at *3 (2d Cir. Apr. 27, 2022) (summary order) (assuming a violation of § 455(a) where the district court judge's spouse owned stock in a company led by one of the parties, even where no facts suggested the judge had knowledge of his spouse's financial interest before issuing the judgment).

"[I]n determining how best to address a violation of § 455(a)," this Court considers three factors: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007). We find that this case implicates each of these factors, and hold that vacatur of the district court's judgment is warranted.

15

As to the first factor, "the risk of injustice to the parties in the particular case," *id.*, there is a plausible risk of injustice to Plaintiffs because it is conceivable, albeit highly unlikely, that the district judge's conflict of interest impacted the outcome of this case. To be clear, we do not question the district judge's reasoned judgment nor mean to suggest that he treated the parties unfairly. Indeed, the Clerk of Court's letter explicitly states that the "ownership of stock neither affected nor impacted" the district judge's decision, Suppl. App'x at 263, and we fully credit that representation. However, the focus of § 455(a) is on avoiding the *appearance* of partiality, even absent an explicit showing of it. *See Chase Manhattan Bank*, 343 F.3d at 127, 133; *see also Liljeberg*, 486 U.S. at 867–68 (noting that even where district court judge did not know of his fiduciary interest in the litigation, he should have known, which was "precisely the kind of appearance of impropriety § 455(a) was intended to prevent"). Because the district judge's impartiality towards the parties may reasonably be questioned based on this appearance, we therefore find that the first factor militates in favor of vacatur.

As to the second factor for assessing a violation of § 455(a), "the risk that the denial of relief will produce injustice in other cases," *Amico*, 486 F.3d at 777, we find that the type of conflict of interest presented here risks injustice in other cases.

16

That injustice, as highlighted by the press coverage of this and other cases regarding disqualification, is that federal judges will fail to recuse themselves in future cases, which—as Plaintiffs correctly argue—may "increas[e] the likelihood that conflicts [] go unnoticed and unremedied." Appellants' Reply Br. at 30. As we have stated before, "judges have an obligation to exercise reasonable effort in avoiding cases in which they are disqualified," and accordingly bear the burden of complying with the strictures of § 455(a). *Chase Manhattan Bank*, 343 F.3d at 130. Thus, by enforcing it here, we hope to "prevent a substantive injustice in some future case" by urging our peers "to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Liljeberg*, 486 U.S. at 868.

Third, we find that there is a legitimate risk that these kinds of violations will "undermin[e] the public's confidence in the judicial process." *Amico*, 486 F.3d at 777. As mentioned, there has been media coverage of this § 455 violation, as well as others, and it is an issue the federal judiciary knows it needs to remedy, as recognized by Chief Justice Roberts. *See* Hon. John G. Roberts, Jr., *2021 Year-End Report on the Federal Judiciary*, 9 (Dec. 31, 2021), https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf

[https://perma.cc/HG7H-UH3T] ("We are duty-bound to strive for 100% compliance [with 28 U.S.C. § 455] because public trust is essential, not incidental, to our function."). With that said, an appearance of partiality "must have an objective basis *beyond* the fact that claims of partiality have been well publicized," *Aguinda*, 241 F.3d at 201 (emphasis added), because a "resort to appearances" risks a "potential slippery slope resulting from the fact that appearances are often in the eye of the beholder" and "can be manufactured by inspiring publicity of repeated claims of bias," *Chase Manhattan Bank*, 343 F.3d at 129. "Judicial inquiry may not therefore be defined by what appears in the press." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988). However, we nevertheless agree that recurrent controversies legitimately risk undermining public confidence in the federal judiciary and its function: the fair adjudication of the law. Because we find that this conflict presents an appearance of impropriety, we therefore conclude that vacating the judgment both complies with our statutory mandate and is the best means of dispelling any potential loss of faith in the judiciary.

Finally, we find that while Judge Liman's wife divested her stock approximately two months before oral argument on the motion occurred, and three months before Judge Liman granted Defendants' motion to dismiss, vacatur

is still warranted. We have held both that "[w]here a case . . . involves remote, contingent, indirect or speculative interests, disqualification is not required," *Lovaglia*, 954 F.2d at 815, and that divestiture under § 455(f) can cure conflicts of interest, *see Kidder*, 925 F.2d at 561. But while "[j]udges may preside over cases in which they appear disqualified," they can "do so only in a very technical sense," such as when a district judge issues "routine, standard scheduling orders in a large number of newly filed cases, missing a disqualifying party in a case with several parties." *Chase Manhattan Bank*, 343 F.3d at 129. That was not the case here. Although divestiture occurred three months before the district court's decision, the parties already had filed their motions and the case was well past the "technical" stage. *See id*. at 131 ("While Section 455(f) allows a judge to divest a newly-discovered disqualifying interest and continue to preside over a case, that divestiture cannot cure circumstances in which recusal was required years before and important decisions have been rendered in the interim."). Permitting curative § 455(f) divestiture once a litigation has advanced to substantive disputes may implicate the risks to the present parties, other proceedings, and public confidence already discussed, and is a determination that must be analyzed on a case-by-case basis. Similarly, *de novo* review of the merits of the underlying claim by a Court of

Appeals does not solve this problem because the root issue—repeated violations of § 455—goes unaddressed if the burden of ameliorating it is shifted to reviewing courts. Here, due to the length of time that Judge Liman presided over this case with a conflict—albeit almost certainly unknowingly—and the substantive motions that came before him in that period, we find that his wife's July 2021 divestiture of Bank of America stock was not sufficiently curative. Accordingly, recusal under § 455(a) was required, and we therefore vacate the decision of the district court granting Defendants' motion to dismiss.

### III.  CONCLUSION

For the foregoing reasons, we **VACATE** the judgment, and **REMAND** the case to the district court for further proceedings before Judge Caproni, consistent with this opinion.